UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

_____

In re:

GREGORY J. REKUCKI,                                   Case No. DK 20-01803
                                                      Chapter 13
                  Debtor.                             Hon. Scott W. Dales

_____/

MEMORANDUM OF DECISION AND ORDER

PRESENT:   HONORABLE SCOTT W. DALES
           Chief United States Bankruptcy Judge

I.  INTRODUCTION

On August 26, 2020, the court conducted a hearing to consider confirmation of the proposed chapter 13 plan of debtor Gregory J. Rekucki ("Mr. Rekucki" or the "Debtor"). The court held the hearing by telephone due to the COVID-19 health emergency and all parties appeared through counsel.

Although the Debtor's plan proposed a substantial dividend, RCS Recovery ("RCS") and the chapter 13 trustee both objected to confirmation,[1] believing that a greater dividend is possible because, in their view, the Debtor is diverting $280.00 of his disposable income each month to pay an obligation in favor of his non-filing spouse, specifically a debt in the nature of child support that she owes to her child's father. RCS sees this as a fraudulent conveyance that the court should not bless by confirming the plan, and that the trustee should avoid and recover under 11 U.S.C. §§ 548(a)(B)(i) and 550(a).[2]

The Debtor explained that for religious reasons his non-filing spouse does not work outside the home, even though a state court has ordered her to pay child support. Instead, she tends to their home as well as the cow and chickens on the farm where they reside.

---

[1] After the Debtor filed his Third Pre-Confirmation Plan Amendment (ECF No. 39), the chapter 13 trustee withdrew her objection.

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. In addition, the court will refer to any Federal Rule of Bankruptcy Procedure or Federal Rule of Civil Procedure simply as "Rule ___," relying on the numbering convention for each set of rules to signal the intended reference.

The court inquired at the hearing whether there is authority for the proposition that such arrangements involving blended families may survive a disposable income objection. The parties agreed to submit briefs addressing the issue. They also stipulated that the court could resolve their dispute without an evidentiary hearing. Both parties have now timely filed their briefs and the issue is ripe for decision.

## II.  JURISDICTION

The United States District Court for the Western District of Michigan has jurisdiction over the Debtor's chapter 13 case and has referred the case to the United States Bankruptcy Court pursuant to 28 U.S.C. § 157(a) and W.D. Mich. LGenR. 3.1(a). Proceedings to consider plan confirmation issues are "core proceedings" under 28 U.S.C. § 157(b)(2)(A) and (b)(2)(L). The court has authority to enter a final order subject to appellate review under 28 U.S.C. § 158(a).

## III.  LEGAL ANALYSIS

First, the court notes that as the proponent of the plan, the Debtor must bear the burden of establishing compliance with confirmation requirements. *In re Hager*, 572 B.R. 848, 851 (Bankr. W.D. Mich. 2017) ("debtor has the ultimate burden of establishing by a preponderance of the evidence that her chapter 13 plan meets the confirmation requirements prescribed in § 1325"); *In re Lofty*, 437 B.R. 578, 584 (Bankr. S.D. Ohio 2010) ("The Debtors have the ultimate burden of proof to show the requirements of 11 U.S.C. § 1325 have been met.").

Section 1325 sets out a number of requirements a debtor must meet before a court may confirm a plan, mostly designed to encourage the debtor to pay as much as possible to creditors while respecting his means and reasonable living expenses. For example, a debtor must propose a plan in good faith (§ 1325(a)(3)) and if the trustee or an unsecured creditor objects, the debtor must commit all of his projected disposable income during the applicable commitment period to the payment of unsecured claims (§ 1325(b)(1)(B)). "Disposable income" means the debtor's current monthly income less expenses reasonably necessary for the maintenance or support of the debtor or a dependent of the debtor. 11 U.S.C. § 1325(b)(2).

In his brief and with little attention to these statutes, the Debtor emphasizes the nature of the debt as child support -- support for his stepdaughter -- and distinguishes the case law that condemns a debtor's payment of a non-filing spouse's consumer debts. However, he does not

offer any authority specifically blessing an arrangement where a stepparent/debtor voluntarily pays the non-filing spouse's child support obligation over the objection of an unsecured creditor.

The Debtor argues that his wife's child is his dependent and reminds the court that his plan provides for an 80% dividend to unsecured creditors. He also trumpets the fact that he is proposing to pay child support, not consumer credit card bills, and not any excessive entertainment or recreation expenses. These factors, he argues, set his particular case apart from the host of contrary cases that preclude a chapter 13 debtor from paying the debts of another. The Debtor argues that he "is not intending to fund his wife's unsecured debt to the detriment of his creditors, [because] he is intending to pay a substantial amount to his unsecured creditors while still providing for the support and maintenance of his family." *See* Debtor's Response to Creditor, RCS Recovery Services, LLC's Brief in Support of Objection to Plan Confirmation (ECF No. 44, the "Debtor's Brief") at p.7.

RCS sees the matter quite differently. Its brief emphasizes that the Debtor's wife, not the Debtor, is obligated to pay for the support of her nine-year-old daughter. RCS argues that the Debtor is impermissibly paying his wife's debt in full -- a debt he is not legally obligated to pay -- while proposing to pay his own creditors only an 80% dividend. Going further, RCS presumes that this arrangement has been going on for at least two years, and that the chapter 13 trustee should avoid and recover the payments from the ex-husband as a fraudulent conveyance. *See* Brief in Support of Objection to Plan Confirmation (ECF No. 43, the "RCS Brief") at ¶ 6. Citing *In re Urban*, 432 B.R. 302, 305 (Bankr. Wy. 2010), RCS argues that "the deduction for the non-filing spouse's child support order is not an amount that is reasonably necessary to be expended under [§] 1325(b)(2) and thus the plan cannot be confirmed unless that amount is added to the plan." RCS Br. at p. 5. Accordingly, RCS objected to the Debtor's plan on the grounds that it does not include all "disposable income" under § 1325(b)(2) and is therefore not filed in good faith.[3]

The court begins and ends its analysis with the language of the statute. Section 1325 provides that if the holder of an allowed unsecured claim, such as RCS, objects to confirmation of a plan that does not pay unsecured creditors in full, the court may not confirm the plan unless it "provides that all of the debtor's projected *disposable income* to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be

---

[3] RCS tends to conflate the disposable income and good faith requirements. *See* RCS Brief at p. 3 (arguing that the revised plan, though an improvement, is "not in good faith because it does not pay all of the debtor's disposable income into the plan.").

applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B)(emphasis added). In other words, Congress prohibits the court from confirming a plan that commits anything less than all of a debtor's disposable income over an unsecured creditor's objection. Consequently, the meaning of the italicized term, "disposable income," lies at the heart of this dispute.

Continuing the statutory analysis, the Bankruptcy Code defines disposable income by reference to income and expenses, providing in relevant part as follows:

> For purposes of this subsection [§ 1325(b)], the term "disposable income" means current monthly income received by the debtor … less amounts reasonably necessary to be expended --
>
> (A) (i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed …

11 U.S.C. § 1325(b)(2)(A). If a debtor's income is below the median income for the size of his family in his state of residence, the court has more discretion to determine disposable income than if his income is above the state's median. In other words, for an above-median income debtor like Mr. Rekucki,[4] the court must calculate the "amounts reasonably necessary to be expended" under § 1325(b)(2) in accordance with § 707(b)(2)(A) and (b)(2)(B). *See* 11 U.S.C. § 1325(b)(3); *see also Baud v. Carroll*, 634 F.3d 327, 347 (6th Cir. 2011), quoting *Frederickson v. Frederickson (In re Frederickson)*, 545 F.3d 652, 658 (8th Cir. 2008) ("In enacting BAPCPA, Congress reduced the amount of discretion that bankruptcy courts previously had over the calculation of an above-median debtor's income and expenses.... [and] rigidly defined 'disposable income'...."). Indeed, this is precisely how the Debtor himself calculated his projected disposable income when he completed Official Form 122C at the beginning of his case.[5]

Per the Debtor's own calculation, his monthly projected disposable income under § 1325(b)(3) is $1,066.00 per month. *See* Official Form 122C-2, ECF No. 1, p. 52, line 45. Over

---

[4] *See* Debtor's Brief at p. 1 (referring to 60-month applicable commitment period); *see also* Official Form 122C-1 (ECF No. 1, p. 42) (indicating that the Debtor's disposable income is determined under § 1325(b)(3)).

[5] Although the Debtor recently amended Schedule J to add his stepdaughter (ECF No. 40), he did not amend Official Form 122C-1 to revise his own calculation of projected disposable income. Moreover, although the parties have not framed their arguments based on § 707(b)(2)(A) and (b)(2)(B) and § 1325(b)(3), the court does not feel free to ignore § 1325(b)(3)'s statutory command. Parties cannot stipulate, expressly or impliedly, to the meaning of a statute.

the 60-month applicable commitment period, his projected disposable income is nearly $64,000.00, well in excess of the allowed claims in this case ($39,850.81 according to the claims register). Although his plan proposes a respectable 80% dividend, given the pending objection the Debtor has not established compliance with § 1325(b)(1): he has not committed all of his projected disposable income to the repayment of unsecured claims.

Assuming, *arguendo*, that the more flexible calculation of disposable income applies as the parties' briefs suggest, the court would reach the same result. If the Debtor's income were below the state's median income, the court would be called upon to consider whether the $280.00 payment of the non-filing spouse's child support debt is "reasonable and necessary" for the support of a "dependent." The Debtor has apparently identified his stepdaughter as the relevant dependent. *See* Debtor's Brief at p. 5 (stating that $280.00 is for the support of his wife's daughter).

There is some controversy, however, regarding whether the Debtor's stepdaughter is a "dependent," a term that the Bankruptcy Code does not define. Presumably because the Debtor has no legal obligation to support his stepdaughter, RCS asserts that she is not a dependent. In many similar contexts, however, the absence of legal obligation is not dispositive of one's status as a "dependent" or similar beneficiary of support.[6] In this day and age when so many families are blended, this is hardly surprising. Here, because the stepdaughter (a minor) lives in the Debtor's household at least part of the time, the court will assume without deciding that she is a "dependent of the debtor" within the meaning of § 1325(b)(2)(a)(i), at least while she is within his household and under his care.

The record does not show how much time the stepdaughter spends in the Debtor's household and how much time she spends with her biological father. In the absence of evidence or even an assertion to the contrary, we might safely assume that when she is with her biological father, he is the one paying for shelter, food, and likely other expenses. If so, it would not be

---

[6] *See*, *e.g.*, *Wittig v. Shalala*, 852 F. Supp. 613, 615 (W.D. Mich. 1994) (recognizing that "a stepchild of an insured individual ... [is] presumed to be dependent on that insured individual" under the Social Security Act); *State Treasurer v. Downer*, 502 N.W.2d 704, 705 (Mich. App. 1993) (recognizing prisoner's moral obligation under M.C.L. § 800.404(5) to support stepchildren); *Wilson v. Gen. Motors Corp.*, 301 N.W.2d 901, 903 (Mich. App. 1980) (recognizing that stepparent has no legal obligation to support stepchild, but that stepchild-dependency question under workers compensation statute is a question of fact, not legal presumption); M.C.L. § 421.27(b)(3)(A) (including stepchildren as beneficiaries under state unemployment insurance law).

"necessary" for the Debtor to pay for the same.  Instead, it might be said that the Debtor is simply defraying the biological father's expenses to buy peace between the former spouses, one of whom is his wife.  This would be a tenuous link to "support" of a dependent as the court understands the statutory terms.  If, on the other hand, the stepdaughter spends all of her time in the Debtor's household, receiving food, clothing, and shelter there, it is certainly more difficult to justify paying child support to a non-custodial parent.  The point is, the record simply does not permit the court to determine that the $280.00 monthly payment is, strictly speaking, "necessary" to support a dependent.

Nor, for that matter, does the Debtor show that the monthly subsidy is "reasonable." Drawing inferences from the record, there are at least three adults in the stepdaughter's life who could support her -- her mother, her biological father, and her stepfather.  Her biological parents are legally obligated to provide this support, but nothing in the record suggests that the Debtor shares the same legal obligation.  While the court applauds the proposed 80% dividend, the fact remains that the Debtor is also proposing a 100% dividend to his spouse's creditor (the ex-husband), thereby funding her unsecured debt to the detriment of his own creditors to whom he does owe a legal obligation.  It is not reasonable to require the Debtor's creditors to subsidize his wife's debts under the circumstances of this case.  As noted above, presumably the maintenance and support of his family, an amount already factored into the plan payment and thus the dividend, includes the support of his stepchild while she is in his home.  Neither the Debtor nor any creditor is required to pay, directly or indirectly, the living expenses of a stepchild while she resides in someone else's home and her stepfather seeks shelter under chapter 13.  *See In re Urban*, 432 B.R. 302, 305 (Bankr. D. Wyo. 2020) ("the Debtor's creditors should not be sacrificed to pay [the non-filing spouse's domestic support] obligation that is not the Debtor's legal obligation.").

The court finds instructive the rationale in *In re Stampley*, 437 B.R. 825, 828 (Bankr. E.D. Mich. 2010), despite the Debtor's efforts to distinguish the case:

> …[T]he debtor's stated net disposable income is significantly lower because the debtor and her husband allocate a large portion of her monthly net disposable income for his sole expenses.  This is unfair to the debtor and even more unfair to the debtor's sole creditors.  For all practical purposes, the excess is a gift, and it is a gift from the spouse who is in bankruptcy and insolvent to the spouse who is not in bankruptcy and to that spouse's creditors.

*Id.* The same reasoning applies here. The Debtor and his creditors should not be expected to bear the burden of a debt solely owed by his wife, no matter how disproportional her debt is to their total monthly expenses. Likewise, of the three adults for whom the child may be a dependent, it is not reasonable that the person who is undeniably insolvent and has sought the protection of the bankruptcy court should be the one to bear the burden, and even less reasonable to ask his creditors to bear it.

The court has no basis for disputing the Debtor's contention that the couple's religious beliefs prevent his wife from working outside the home, and certainly respects the couple's choice, but this choice has consequences. The Debtor has made another choice by filing a voluntary petition under chapter 13, and that choice also has consequences. One of those consequences is that his success in confirming a plan depends on his compliance with the Bankruptcy Code, including § 1325(b)(1). Moreover, the court does not find persuasive the Debtor's citation to *In re Green*, 73 B.R. 893 (Bankr. W.D. Mich. 1987), *aff'd* 103 B.R. 852 (W.D. Mich. 1988), holding that approving a Debtor's modest tithing payment does not violate the Establishment Clause of the First Amendment to the U.S. Constitution. To the extent Judge Howard commented on the supposed burden on the free exercise rights of the debtors that would result from banning the tithing, the comments are *dicta*, and *dicta* that Judge Enslen rejected as such. *In re Green*, 103 B.R. at 854 n. 2. Moreover, the voluntary nature of the chapter 13 proceeding further undermines the "free exercise" argument, an argument that the court also rejects as underdeveloped in the Debtor's brief.[7] The "pressure" that the Debtor's wife feels to seek employment comes as much from the state court's order requiring her to support her daughter, as from her husband's commencement of an entirely voluntary bankruptcy proceeding. Before invalidating a facially neutral statutory provision such as the disposable income requirement of § 1325, the court would insist on a showing much stronger than simply a reference or two to "pressure" included in a brief.

Having concluded that the Debtor fails to establish compliance with § 1325(b)(1), it is unnecessary to find whether the Debtor's plan is proposed in good faith. In addition, the court notes that the chapter 13 trustee is no longer objecting on good faith grounds, perhaps because it

---

[7] The court assumes that if the Debtor were genuinely calling into question the constitutionality of the disposable income requirement of § 1325(b)(1), he would have notified the Attorney General of the United States. *See* Fed. R. Bankr. P. 9005.1.

would be difficult to find bad faith where a debtor is proposing an 80% dividend in part for religious and family reasons.

### IV.   CONCLUSION AND ORDER

The court appreciates the chapter 13 trustee's approach to the disposable income issue in this case, and recognizes that she has discretion to raise a disposable income objection, or not, based on a debtor's circumstances. Her objection to the Debtor's earlier iteration of his plan prompted him to increase the dividend to a respectable 80%. Taking this into account, and considering the circumstances of a blended family attempting to accommodate its religious beliefs, the trustee again exercised her discretion and withdrew the objection. The court, however, is not free to address the issue in the same way now that Congress has clearly limited judicial discretion in cases involving an above-median income debtor with an objecting creditor. *Baud*, 634 F.3d at 347. The court also understands RCS's reasons for not agreeing to subsidize the non-filing spouse's separate obligation.

Because RCS did not withdraw its well-founded objection to the plan, and because the plan does not promise full payment of its claim, the court will sustain the objection and deny confirmation.

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1.     The RCS objection to the plan (as amended) is SUSTAINED and confirmation is DENIED;

2.     The Debtor shall file a revised plan in compliance with the Bankruptcy Code and a motion to confirm it, within 28 days after entry of this Memorandum of Decision and Order; and

3.     If the Debtor fails to file a new plan and motion to confirm it within that time, the court may dismiss the case without further notice.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Barbara P. Foley, Esq., Harlee Alexander, Esq., Scott Mancinelli, Esq., and Gregory J. Rekucki (via first class U.S. Mail).

**IT IS SO ORDERED.**



**Dated October 15, 2020**

Scott W. Dales
United States Bankruptcy Judge